IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL M. LANEVE, ) <br> ) <br> PLAINTIFF ) <br> ) <br> ) <br> vs. ) <br> ) <br> LATROBE STEEL COMPANY, trading and ) <br> Doing business as LATROBE SPECIALTY ) <br> STEEL COMPANY, a wholly owned subsidiary ) <br> of ) <br> CARPENTER TECHNOLOGY CORPORATION ) <br> ) <br> ) <br> ) <br> DEFENDANTS ) | Docket No.:_____ <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED <br><br> Judge:_____ |

## **COMPLAINT**

AND NOW, Comes the Plaintiff, Daniel M. Laneve, by and through his attorney, Paul R. Giba, Esquire and files the following Complaint and avers as follows:

1. Plaintiff, Daniel M. LaNeve, is a Citizen of the United States, residing at 2012 Jamestown Court, Valencia, Butler County, Pennsylvania 16059.

2. Defendant Latrobe Steel Company, is a Citizen or the United States and a Corporation existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 2616 Ligonier Street, Latrobe, Westmoreland County, Pennsylvania 15650.

3. At all times material hereto, Defendant Latrobe Steel Company traded and did business under a fictitious name, registered in the Commonwealth of Pennsylvania, known as "Latrobe Specialty Steel Company", with its principal place of business at 2616 Ligonier Street, Latrobe, Westmoreland County, Pennsylvania 15650.

4. At all times material hereto, both Latrobe Steel Company and its fictitious name, Latrobe Specialty Steel Company, were wholly owned subsidiaries of Carpenter Technology Corporation, a Citizen of the United States, or, in the alternative, sometime subsequent to Plaintiff's date of employment and/or discharge, purchased the assets and liabilities of Latrobe Steel Company. Carpenter Technology Corporation maintains its principal place of business is located at 101 West Bern Street, Reading, Pennsylvania 19612.

5. Defendants Latrobe Steel Company, t/d/b/a Latrobe Specialty Steel Company and Carpenter Technology Corporation, for the purposes of the allegations hereinafter set forth, will be referred to collectively as "Defendant".

6. At all times material hereto, Defendant acted by and through their authorized agents, servants, mangers and employees who were, at all times material hereto, were acting within the scope of their authority and on behalf of Defendant .

7. Jurisdiction of this action is based upon the AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 USC Section 621-634 for damages based on the unlawful employment practice committed by defendant is invoked pursuant to 28 USC Sections 1331, and 29 USC Sections 216(b) and (c).

8. At all times material hereto, Defendants were engaged in an industry affecting interstate commerce employing twenty (20) or more persons for each working day in each of twenty (20) calendar weeks in the current or preceeding calendar year.

9. On February 2, 2012, Defendant made a written offer of employment by Defendant as a Senior Industrial Engineer/ A copy of said written offer is attached hereto and marked Exhibit "A", and incorporated herein by reference. Plaintiff accepted Defendant's offer and

reported to work on February 11, 2011. At all times material hereto, Plaintiff was an " employee" of Defendant.

10. When hired and throughout his employment with Defendant, Plaintiff met applicable job qualifications, was qualified for the position which he held, and performed the job in a manner which fully met the Defendant's legitimate expectations.

11. At the start of his employment, as set forth in Exhibit "A", Plaintiff was earning $50,000.00 annually, which included Medical, Dental, Vision, Prescription, Life, Accident and Disability and Retirement benefits, and would have been eligible, had he been retained, for annual pay raises. Attached hereto and marked respectively as Exhibits "B" and "C", are documents provided contemporaneously with Defendant's offer of employment, entitled "Latrobe Speciality Steel Company, 2011 monthly Access Fees" and "Latrobe Specialty Steel Company 2011 Benefit Summary Guide for Health, Life & Disability Insurance".

12. On December 2, 2011, Plaintiff was wrongfully discharged from employment by Defendant.

13. On the date of his discharge from employment by Defendant, Plaintiff was 50 years of age, having been born on January 24, 1961.

## COUNT I

## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

14. The averments of paragraphs 1 through 13 are incorporated herein by reference.

15. The Defendant refused to retain the Plaintiff because of his age.

16. The Defendant treated employees not in the protected age group more favorably because of their age.

17. The Plaintiff was replaced by a person, or persons, under forty (40) years of age.

18. The Plaintiff's age was a motivating factor in the Defendant's decision to discharge the Plaintiff.

19. The Defendant's discharge of the Plaintiff because of his age violated the AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 USC, Section 623 (a) (1).

20. On or about May 26, 2012 , the Plaintiff filed a charge of employment Discrimination with the Equal Employment Opportunity Commission, hereinafter "EEOC. The EEOC cross- filed with the Pennsylvania Human Relations Commission, hereinafter "PHRC", on behalf of the Plaintiff. Attached hereto and marked as Exhibit "D" is a copy of the EEOC's Notice to Plaintiff wherein Plaintiff elected to have the EEOC cross-file with the PHRC. On May 15, 2013, the EEOC issued a "Dismissal and Notice of Rights" to Plaintiff and Defendant, a copy of which is attached and marked Exhibit "E". The envelope containing said Notice was postmarked May 15, 2013. The Plaintiff receive said Notic on May 17, 2013. Said Notice authorized Plaintiff to bring this action pursuant to 29 USC Section 626 (d). The PHRC, as of the date of the filing of this Complaint , has not issued any similar notice to the Plaintiff or the Defendant.

21. The Defendant's violation of 29 USC Section 623(a)(1) of the AGE DISCRIMINATION IN EMPLOYMENT ACT has proximately caused the Plaintiff to suffer damages.

22. The defendant's violation of 29 USC Section 623 (a) (1) of the AGE DISCRIMINATION IN EMPLOYMENT ACT was willful.

WHEREFORE, the Plaintiff prays that court order such relief as is necessary to make the Plaintiff whole, including:

(a). Reinstatement or, alternatively, front pay;

(b). Damages, including loss of pay and benefits;

(c). Statutory liquidated damages due to the Defendant's willful conduct;

(d). Attorneys' fees and costs incurred in this action;

(e). Award Plaintiff punitive damages calculated in a sum to deter such future conduct.

(f).. Such other relief as is just and equitable.

## COUNT II

## HARASSMENT IN THE WORKPLACE AND HOSTILE WORK ENVIRONMENT

23. The averments of paragraphs 1 through 22 are incorporated herein by reference.

24. When Plaintiff was hired he was being groomed to take over the job of a retired employee, Steve Kozar, who had retired on December 31, 2010. Steve Kozar, despite being retired, continued to work on a part-time basis, several days a month.

25. Steve Kozar was supposed to train Plaintiff in the duties of his job, including, but not limited, educate Plaintiff in the methodology and computer software associated with the job. Steve Kozar only spent four (4) days a month training Plaintiff.

26. A managerial employee, Gary Puto, was primarily responsible for training Plaintiff to take over the job responsibilities of Steve Kozar.

27. During the first six (6) months of his employment, Plaintiff was repeatedly informed by his immediate supervisor, Gary Puto, that he was doing a "good job". Furthermore, Gary Puto told Plaintiff that he was progressing adequately with his training and on schedule to take over Steve Kozar's job.

28. During the Summer of 2011, several disputes arose between Steve Kozar and Gary Puto over the training plan for Plaintiff.

29. Gary Puto provided training to Plaintiff which was geared more toward Gary Puto's position rather than Steve Kozar's position.

30. Said dispute over the training of Plaintiff caused a major rift between Steve Kozar and Gary Puto, which substantially interfered with Plaintiff's training.

31. Plaintiff then sought the advice of the Union representative to assist in the dispute between Steve Kozar and Gary Puto and was told that Steve Kozar and Gary Puto had a long history of animosity toward each other, and that Plaintiff should contact Brian Benjamin, the Controller, to intercede.

32. Brian Benjamin, the Controller, intervened in the dispute and sought information from the Plaintiff as to what was occurring. Plaintiff had a frank, heart-to-heart, meeting with Brian Benjamin and as a result, Plaintiff was placed on a six (6) week evaluation program to monitor his training and success.

33. Brian Benjamin's advice to Plaintiff was to treat Gary Kozar as the "Zen Master" and to work more hours and not take any sick days. Plaintiff followed his advice and the level of strees increased due to the escalating conflict between Steve Kosar and Gary Puto.

34. During said conflict, Plaintiff became the target of Steve Kozar's and Gary Puto's Frustrations, a hostile work environment was created, and as a result, neither Steve Kozar or Gary Puto put forth an adequate effort to train Plaintiff.

35. Beginning in September, 2012, Plaintiff was given a review and then four (4) more subsequent reviews, and during these reviews Plaintiff was told, all of a sudden, that his performance was not up to the Defendant's expectations.

36. On or about September, 2011, Plaintiff learned that Defendant Latrobe Steel

Company t/d/b/a Latrobe Specialty Steel Company was in the process of being sold to Defendant Carpenter Technology Corporation and that the Defendant would be consolidating or eliminating jobs, which created an even more stressful and hostile work environment.

37. On his second review, a question was asked by a Senior Manager, Brian Benjamin, to Gary Puto, "Do you think that a younger recent college graduate could do the job better or pick it up quicker (than Daniel)." Gary Puto replied, "I believe that a recent college graduate would pick it up quicker than Daniel."

38. From September, 2011 through the date of Plaintiff's discharge, Defendant, through its managerial employees, engaged in a course of repeated harassment, including, but not limited to:

(a). Purposefully providing wrong information or incorrect calculation methods to demean or make Plaintiff look incompetent;

(b). Refusing to properly train Plaintiff in all aspects of his job;

(c). Talking behind Plaintiff's back to other employees about Plaintiff in a demeaning or condescending way, with the intention of harassing Plaintiff, in an attempt to get Plaintiff to voluntarily quit;

(d). Giving Plaintiff meaningless, "busy work";

(e). By not creating a clear job description.

39. The purpose of the aforesaid harassment was to secure the voluntary or involuntary termination ot the Plaintiff's position with Defendant.

40. The defendant's violation of 29 USC Section 623 (a) (1) of the AGE DISCRIMINATION IN EMPLOYMENT ACT was willful.

41. Because age was a motivating factor and made a difference in the decision to first harass and then discharge Plaintiff, Defendant Latrobe vilated the AGE DISCRIMINATION IN EMPLOYMENT ACT with knowing or reckless disregard of the Act's proscriptions.

WHEREFORE, the Plaintiff prays that this Court order such relief as is necessary to make the Plaintiff whole, including:

(a). Reinstatement or, alternatively, front pay;

(b). Damages, including loss of pay and benefits;

(c). Statutory liquidated damages due to the Defendant's willful conduct;

(d). Attorneys' fees and costs incurred in this action;

(e). Punitive damages calculated to deter such further conduct.

(f).. Such other relief as is just and equitable.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTION DISTRESS

42. The averments of paragraphs 1 through 41 are incorporated herein by reference.

43. From September, 2011 through the date of Plaintiff's discharge, each conference or review that the Plaintiff had with management resulted in repeated, unfounded criticism of Plaintiff's work, including, but not limited to:

(a). Giving Plaintiff assigments and then criticizing him for minor variances in calculations.

(b). Berating Plaintiff in front of co-employees.

(c). Being told that his work was inept and that his work would not be tolerated by the Company.

(d). By management telling other co-employees that Plaintiff's days were numbered or that he was incompetent, inept or too old to learn:

(e). By assigning other managerial employees to train Plaintiff who were not qualified or unwilling to train Plaintiff properly;

(f). By deliberately providing Plaintiff wrong methodology to set Plaintiff up for failure or criticism.

(g). By requiring Plaintiff to perform funtions of other employees which interfered with his ability to do his own work, meet his own deadlines, and provide more accurate levels of work product.

(h). By providing false or inaccurate information or advise to set Plaintiff up for failure or criticism.

44. From September, 2011 through the date of his discharge, due to the repeated harassment and hostile work environment, Plaintiff became apprehensive about his future with Defendant, and suffered emotional distress and mental anguish about the way he was being treated.

45. As a result of the aforesaid conduct of Defendant, and his discharge from Defendant, Plaintiff has suffered, and will continue to suffer, great emotional distress and mental anguish.

46. The aforesaid conduct violated internal company rules, regulations, protocol and practices and was motivated by discriminatory animus.

47. . By putting Plaintiff through the circumstances surrounding his discharge and doing so in an effort to force him to resign or quit, Defendant has intentionally inflicted emotional distress and mental anguish on Plaintiff.

48. As a direct and proximate result of the intentional infliction of emotional distress and mental anguish by Defendant upon Plaintiff, Plaintiff has suffered tangible and intangible damages.

WHEREFORE, the Plaintiff prays that court order such relief as is necessary to make the Plaintiff whole, including:

(a). Reinstatement or, alternatively, front pay;

(b). Damages, including loss of pay and benefits;

(c). Statutory liquidated damages due to the Defendant's willful conduct;

(d). Attorneys' fees and costs incurred in this action;

(e). Award Plaintiff monetary damages to fully compensate him for his out of pocket losses, emotional distress and mental anguish.

(f). Award Plaintiff punitive damages calculated in a sum to deter such future conduct.

(g). Such other relief as is just and equitable.

## COUNT IV

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

49. The averments of paragraphs 1 through 48 are incorporated herein by reference.

50. By acting in the manner as aforesaid and by faling to provide Plaintif with employee assistance as required by the company handbook, practices, customs, protocol, rules and regulations, which would have ensured Plaintiff's due process rights, Defendant breached its obligation to deal with Plaintiff fairly and in good faith.

51. As a direct and proximate result of Defendant's conduct, as aforesaid, Plaintiff has suffered damages.

WHEREFORE, the Plaintiff prays that court order such relief as is necessary to make the Plaintiff whole, including:

(a). Reinstatement or, alternatively, front pay;

(b). Damages, including loss of pay and benefits;

(c). Statutory liquidated damages due to the Defendant's willful conduct;

(d). Attorneys' fees and costs incurred in this action;

(e). Award Plaintiff monetary damages to fully compensate him for his out of pocket losses, emotional distress and mental anguish.

(f). Award Plaintiff punitive damages calculated in a sum to deter such future conduct. . Such other relief as is just and equitable.

(g). Such other relief as is just and equitable.

**THE PLAINTIFF REQUEST A JURY TRIAL OF THIS ACTION**

Respectfully submitted,

*Paul R. Giba*

Paul R. Giba, Esquire
Attorney For Plaintiffs
PA I.D. No.: 36621
GIBA LAW OFFICE
1840 Mayview Road, Suite 200
Bridgeville PA 15017
Tele: (412) 564-5357
Fax: (412) 564-5348
Email: paulrgiba@gmail.com

## **VERIFICATION**

I verify that the averments contained in the within COMPLAINT IN CIVIL ACTION are true and correct to the best of my knowledge, information and belief. I understand that false averments herein are made subject to the penalties of Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Date: 8/13/2013                              _____
                                             DANIEL M. LANEVE