# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL M. LANEVE, ) | |
| ) | |
| Plaintiff, ) | Civil Action 14-216 |
| ) | |
| v. ) | |
| ) | |
| LATROBE STEEL COMPANY, trading and ) | |
| doing business as LATROBE SPECIALTY ) | |
| STEEL COMPANY, a wholly owned subsidiary ) | |
| of CARPENTER TECHNOLOGY ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## OPINION AND ORDER

Pending before the Court are Defendant's Motion to Dismiss Plaintiff's Complaint [ECF #6] and Plaintiff's Motion for Leave to File Amended Complaint [ECF #17].

Plaintiff's Complaint against Defendant alleges violations of the federal Age Discrimination in Employment Act ("ADEA") and state law claims for intentional infliction of emotional distress and breach of a covenant of good faith and fair dealing, all related to Plaintiff's treatment and eventual discharge as a Senior Industrial Engineer by Defendant on December 2, 2011. Plaintiff's proposed Amended Complaint contains the same claims, and adds additional factual allegations in support thereof.

Defendant opposes Plaintiff's Motion for Leave to File Amended Complaint on the basis that allowing him to file an Amended Complaint would be futile. For the reasons set forth below we will grant in part and deny in part Defendant's Motion to Dismiss and similarly, grant in part and deny in part Plaintiff's Motion for Leave to File Amended Complaint.

1

## I. Standard of Review.

### A. Motion to Dismiss a Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); *accord* Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); *accord* Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim'." Id. (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, (2009)). Next, the factual and legal

2

elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); *accord* Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When the complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000). Rule 15(a) states that "leave [to amend] shall be freely given when justice so requires." The factors that may justify denying leave to amend include "futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend may be denied as futile if the amendment could not withstand a motion to dismiss. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).

**B. Motion to Amend a Complaint Pursuant to Federal Rule of Civil Procedure 15(a)(2).**

Pursuant to Fed.R.Civ.P.15(a)(2), unless requested within the appropriate time limits set forth in Rule 15(a)(1), a party may amend its pleading only with the opposing party's written consent, or the court's leave. Rule 15(a) promotes a liberal leave policy, requiring that leave be given when justice so requires such as in the absence of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, and repeated failure by plaintiff to cure deficiencies

through earlier amendment. See Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182. Further, a court can deny a motion to amend if the amendment would be futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). In determining whether a claim would be futile, we are to apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b) (6). Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir. 2010). Futility thus means that the Complaint, as amended, would fail to state a claim upon which relief could be granted, and in assessing futility, the court must take all well-pleaded facts in the proposed amended complaint as true and construe them in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), Jordan v. Fox Rothchild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). Futility may only serve as a basis for denial of leave to amend where "the proposed amendment 'is frivolous or advances a claim ... that is legally insufficient on its face.'" Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D. N.J.1990) (citing 6 Wright, et al. Federal Practice and Procedure § 1487 (2d ed.1990)).

## II. Legal Analysis.

### A. Timeliness of filing of Plaintiff's original Complaint.

Defendant raises a number of arguments in its Motion to Dismiss Plaintiff's Complaint and various supporting and opposition briefs. The first argument is that Plaintiff's ADEA claims must be dismissed because Plaintiff failed to timely file his original Complaint containing an ADEA claim as mandated by statute. Plaintiff has filed numerous responses to this argument, including a Motion to Determine Complaint Filing Date [ECF #11] which we granted on August 11, 2015 to the extent that he requested that we make a

4

judicial inquiry of the Clerk of Court's Office to assist in our legal determination of the date on which Plaintiff filed a civil action against Defendant that alleged violation of the ADEA.

An ADEA plaintiff is required, as a prerequisite to filing a civil action, to file a charge of discrimination with the EEOC, and the EEOC is required to notify the claimant that proceedings on his charge were dismissed or otherwise terminated (via, e.g., a Notice of Right to Sue). See generally 29 U.S.C.A. § 626(e). Thereafter, to be timely filed in federal court a civil action alleging violation of the ADEA must be brought within ninety (90) days of receipt of such notice. McCray v. Corry Mfg. Co., 61 F.3d 224, 227 (3d Cir.1995) (*quoting* 29 U.S.C. § 626(e)). Further, there is a presumption that the Notice of Right to Sue is received three (3) days after it is mailed by the EEOC unless the plaintiff alleges facts sufficient to establish the date on which they received the right to sue letter in which case that date controls for determining when the ninety day clock beings to run. Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999).

In the instant case, Plaintiff alleges that he filed his charge with the EEOC on May 26, 2012, and received the EEOC's Determination and Notice of Right to Sue, which was dated May 15, 2013, on May 17, 2013. Complaint, ¶ 20. Plaintiff's counsel, by way of an Affidavit, further states that he attempted to file the Complaint and other relevant paperwork through this Court's Electronic Computer Filing ("ECF") system on Thursday, August 15, 2013, but that, although he "followed all steps necessarily to electronically file the Complaint on August 15, 2013," "a technical failure occurred." June 19, 2014 Supplemental Affidavit of Paul R. Giba, Esquire. A $400 transaction fee was processed by pay.gov using Plaintiff's counsel's credit card on August 16, 2013.

5

We believe Plaintiff's counsel, an officer of this Court, when he says that he attempted to file the Complaint on August 15, 2013. In further support of his position, which Plaintiff did not cite to as support for his attempt to file on August 15, 2013, but which the Court has taken judicial notice of is the "Civil Cover Sheet" which was attached to the Complaint when it was "refiled" on February 14, 2014; this Civil Cover Sheet is dated, on two (2) places in the document, August 15, 2013.[1] Additionally, this Court has inquired of the Clerk of Court's staff about the possibility that Plaintiff's counsel could have attempted to file the Complaint late in the evening of August 15, 2013, paying the $400 transaction fee, and not have the transaction be processed by pay.gov until the evening of August 16, 2013, a time lapse of almost 24 hours; the answer was after, an inquiry to a pay.gov customer service representative, that it can take up to one business day for a transaction to post. In other words, it is possible that Plaintiff's counsel attempted to file the Complaint on August 15, 2013 even though the pay.gov transaction was not processed until August 16, 2013.

Finally, whether this failure to successfully file the Complaint was the result of a technical computer failure or Plaintiff's counsel failure to properly execute the transaction cannot be definitively answered. Upon inquiry by this Court's chambers to the Information Systems section of the Clerk of Court's Office, it was explained that technical failures on the ECF system are not common, but have occurred, and that any log that would have indicated that a technical failure had occurred (or not occurred) on the evening of August 15, 2013

---

[1] We find this document particularly telling because it was filed with the Court on February 14, 2014, well before the issue was raised by defense in its Motion to Dismiss and certainly refutes Defendants' statement that "Mr. Giba's representation that he filed the Complaint on August 15, 2013 only appears to have come about after he was informed by the undersigned that Defendants believed the purported filing on August 16, 2013 was untimely." Defendants' Response in Opposition to Plaintiff's Motion to Determine Complaint Filing Date, p. 4.

would only have been archived in the Court's computer system for a short time only before the log was taped over; typically logs are archived for five weeks before being discarded.

The difficulty here is that regardless of whether the fault was a human error or a computer error, pursuant to Rule 4 of this Court's "Electronic Case Filing Policies and Procedures" which Plaintiff's counsel is responsible for knowing:

> [e]lectronic transmission of a document to the Electronic Filing System in accordance with this Court's Electronic Case Filing Policies and Procedures, together with the transmission of a Notice of Electronic Filing from the court, constitutes filing of the document for all purposes of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Local Rules of this court, and constitutes entry of the document on the docket kept by the clerk under Fed.R.Civ.P. 58 and 79....

Rule 4 (emphasis added). Rule 4 further states: "[a] document filed electronically is deemed filed on the 'filed on' date on the Notice of Electronic Filing ["NEF"] from the court." Id. Here, Plaintiff's counsel acknowledges "[n]o filing receipt or Notice of Filing Activity was emailed to me or generated automatically as is usual and customary by the CM-ECF intake," See Giba Affidavit, ¶ 8. In other words, for one reason or another, the Court never generated and sent out an NEF.

Further, when an attorney is first trained on the CM/ECF system it is explained that a document is not "filed" with this Court until a "Notice of Electronic Filing" ("NEF") is received by email and perhaps most importantly, it is emphasized to counsel that if a "NEF" is not received or there are any other problems incurred during the use of the CM/ECF filing system, the filer is supposed to promptly contact the Clerk of Courts office so that the issue can be addressed.

Thus, consistent with Rule 4, we find that the Complaint was not filed on August 15, 2013. Instead, it was filed on February 14, 2014, the date Plaintiff's counsel electronically

7

transmitted the document to the Electronic Filing System and the Court transmitted a NEF to counsel. See Notice of Electronic Filing dated February 14, 2014 attached to Complaint.

Absent equitable tolling of the limitations period from August 15, 2013 to February 14, 2014, then, Plaintiff's ADEA claims would have to be dismissed for failure to timely file them in federal court. As explained by the appellate court in Pizio v. HTMT Global Solutions, 555 Fed. Appx. 169 (3d Cir. 2014):

> "[T]he time limitations set forth in Title VII are not jurisdictional." "The doctrine of equitable tolling stops a statute of limitations period from running after a claim has accrued, but should be applied 'sparingly.'" The plaintiff therefore bears the burden of demonstrating that he exercised reasonable diligence and that equitable tolling is appropriate under the circumstances. We have held that there are generally three circumstances where equitable tolling would be appropriate:
>
>> (1) [W]here the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.
>
> We have also noted that "equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" The benefit of tolling is meant for those who have "'exercised reasonable diligence in investigating and bringing [their] claims.'" In other words, "[m]ere excusable neglect is not sufficient."

Id. at *176 (internal citations omitted).

Here, while Plaintiff's counsel provides no explanation for why he waited almost six months to attempt to serve the original Complaint, i.e. almost two (2) months past the 120 day time limit for service provided under Fed.R.Civ.P. 4(m), we nevertheless conclude that by attempting to file the Complaint on August 15, 2013, Plaintiff sufficiently "'exercised reasonable diligence in investigating and bringing [his] claims'" such that equitable tolling should be applied in this case and Plaintiff's Complaint deemed timely filed. Id.

"Alternatively, we find it prudent to toll the limitations period in this case because "it would be inequitable if it turned out that [Plaintiff] had to suffer the consequences of an error made by ... an electronic malfunction in the Court's ECF system." Hansen v. Astrue, 2012 WL 1551887, *4 (W.D. Pa.) (J. Hornak) (court tolled limitations period with respect to appeal of denial of claim for social security where plaintiff's counsel averred that she had tried to commence an action by filing a motion to proceed *in forma pauperis*, accompanied by a proposed Complaint, on plaintiff's behalf through court's ECF system and "[f]or reasons that are not entirely clear, the filing did not go through."). See also Gilliam v. Verizon Pennsylvania, Inc., 2014 WL 901296 (W.D. PA) (J. Mitchell) (court tolled limitations period in Title VII case where court charged plaintiff's counsel a filing fee and generated a payment receipt but for some reason did not accept the complaint for filing). Therefore, Plaintiff will not be barred from bringing his ADEA claims based upon the Complaint setting forth said claims not being timely filed; Defendant's motion to dismiss Plaintiff's ADEA claims on this basis is denied.

**B. Plaintiff's claim of age discrimination under the ADEA.**

As an alternative to timeliness argument, Defendant argues that Plaintiff's ADEA age discrimination claim contained in his original Complaint must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff responded to this contention by filing a Motion to Amend his Complaint and attaching his proposed Amended Complaint.

The Third Circuit, in Hill v. Borough of Kutztown, stated the elements necessary to an age discrimination claim under the ADEA:

> To state a claim for age discrimination under the ADEA, a plaintiff must allege that (1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment

> decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination.

455 F.3d 225, 248 (3d Cir. 2006) (citing <u>Potence v. Hazleton Area Sch. Dist.</u>, 357 F.3d 366, 370 (3d Cir. 2004)).

Having reviewed the factual allegations in Plaintiff's Complaint and Amended Complaint, we find that Plaintiff's original Complaint fails to state an age discrimination claim under the ADEA upon which relief can be granted, but that his proposed Amended Complaint does state a claim of age discrimination under the ADEA upon which relief can be granted. Accordingly, Defendant's Motion to Dismiss Plaintiff's ADEA disparate treatment claim in Plaintiff's original Complaint for failure to state a claim upon which relief can be granted is granted and Plaintiff's Motion to Amend his Complaint is granted to the extent he seeks permission to allege the proposed ADEA age discrimination claim.

### C. Plaintiff's claim of hostile work environment under the ADEA.

The Third Circuit has not "formally recognized a cause of action for hostile work environment under the ADEA. See <u>Lyles v. Philadelphia Gas Works</u>, 151 F. App'x 169, 171 n. 3 (3d Cir.2005); <u>see also</u> <u>Slater v. Susquehanna Cnty.</u>, 465 F. App'x 132, 138 (3d Cir.2012) (assuming "without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim" (citations omitted)). However, district courts within the Third Circuit have recognized a cause of action for hostile work environment based on the ADEA. See <u>Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home</u>, 2014 WL 2921534, at *4 (E.D. Pa. June 27, 2014) (<u>citing</u> <u>Slater</u>, 465 F. App'x at 138); <u>Mauriello v. Sears Roebuck & Co.</u>, 2014 WL 67312, at *3 (D.N.J.) (<u>citing</u> <u>Slater</u>, 465 F. App'x at 138); <u>O'Malley v. Fairleigh Dickinson Univ.</u>, 2014 WL 67280, at *17 (D. N.J.) (<u>citing</u> <u>Culler v. Sec'y of U.S. Veterans</u>

10

Affairs, 507 F. App'x 246, 249 n. 3 (3d Cir. 2012); and Slater, 465 F. App'x at 138); but see Blozis v. Mellon Trust of Del. Nat'l Ass'n, 494 F. Supp.2d 258, 272 (D. Del. 2007) (declining to recognize a cause of action for hostile work environment under the ADEA (citing Lyles, 151 F. App'x at 172)).

Assuming that such a cause of action exists, to state a facially plausible hostile work environment claim under the ADEA, a complaint must allege that: "'(1) the employee suffered intentional discrimination because of [his age]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [him]; (4) the discrimination would detrimentally affect a reasonable person of the same [age] in that position; and (5) the existence of respondeat superior liability.'" Huston, 568 F.3d at 104 (quoting Weston, 251 F.3d at 426); see also Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home, 2014 WL 2921534, at *4 (E.D.Pa. June 27, 2014) ("The same criteria [utilized in a Title VII gender discrimination case] are utilized when assessing a hostile work environment claim based on age." (citation omitted)).

In determining whether harassment is sufficiently severe or pervasive to create a hostile work environment, we consider the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Jensen v. Potter, 435 F.3d 444, 451 (3d Cir.2006), overruled in part on other grounds by Burlington N., 548 U.S. 53 (quoting Harris, 510 U.S. at 23; and citing Andrews, 895 F.2d at 1482). A plaintiff alleging discrimination does not prove ... the existence of a hostile working environment by alleging some magic threshold number of incidents.'" West v. Philadelphia Elec. Co., 45 F.3d 744, 757 (3d Cir. 1995),

abrogation on other grounds recognized by Mandel v. M & Q Packaging Corp., 706 F.3d 157, 166-67 (3d Cir.2013) (quoting Daniels v. Essex Grp., 937 F.2d 1264, 1275 (7th Cir.1991)).

Defendant argues that Plaintiff's original Complaint must be dismissed and Plaintiff's Motion to File an Amended Complaint should be denied to the extent he has alleged an ADEA hostile work environment claim because the allegations in Plaintiff's Complaint and Amended Complaint do not show the requisite severe or pervasive discrimination to support such an ADEA claim. Defendant's Omnibus Response, p. 5. We agree. Neither the allegations contained in Plaintiff's Complaint nor in his Amended Complaint are insufficient to plausibly allege a hostile work environment claim under the ADEA. See Whitesell v. Dobson Comm'n, 353 F. App'x 715, 717 (3d Cir. 2009) (finding that older assistant sales manager was not subjected to age-based hostile work environment because her supervisor's remarks about her age were neither physically threatening nor humiliating); Pettway v. City of Philadelphia, 2011 WL 2987994, at *4 (E.D. Pa. July 22, 2011) (dismissing hostile work environment claim involving three incidents in one year period); Mayo v. Mercy Phila. Hosp., 2011 WL 1045101, at *3 (E.D. Pa.) (dismissing hostile work environment claim involving three incidents in five month period). Therefore, Defendant's Motion to Dismiss Plaintiff's ADEA hostile work environment claim is his original Complaint is granted. Further, Plaintiff's Motion to Amend his Complaint to include the proposed ADEA hostile environment claim contained in Count II of the Amended Complaint is denied on the basis that the complaint, as amended, would fail to state a claim upon which relief could be granted. Fowler, 578 F.3d at 210.

## D. Plaintiff's intentional infliction of emotional distress claim.

Plaintiff's claim for intentional infliction of emotional distress ("IIED") is a state tort claim governed by the substantive law of Pennsylvania. "To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and dangerous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. 1997). Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possibly bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super. 1997). "Invidious discrimination is not alone sufficient to support an intentional infliction of emotional distress claim." Lane v. Cole, 88 F. Supp.2d 402, 406 (E.D. Pa. 2000). See also Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) ("it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress").

Defendant first argues that Plaintiff's IIED claim must be dismissed as a matter of law/Plaintiff's motion to amend his Complaint should not be granted as to his proposed IIED claim because the claim is barred by the exclusivity provision of the Pennsylvania Workers' Compensation Act ("PWCA"), 77 P.S. 1 et seq. Defendant's Omnibus Response, p. 6. Defendant alternatively argues that Plaintiff's IIED claim must be dismissed for failure to state a claim upon which relief can be granted and Plaintiff's Motion to Amend the Complaint to add his IIED claim should be denied because his allegations, even if true, do not demonstrate that Defendant's conduct was extreme and outrageous. Id.

13

The PWCA bars IIED claims that arise out of an employment relationship, with one exception. See Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997). There is a personal animus exception wherein if the alleged injury was motivated by personal reasons as opposed to generalized contempt or hatred and did not arise in the course of employment then the PWCA does not preempt an IIED claim. See 77 P.S. § 411. See also Fugarino v. Univ. Servs., 123 F. Supp.2d 838, 844 (E.D. Pa. 2000).

Turning to the allegations in Plaintiff's original Complaint and his proposed Amended Complaint, even if the alleged harassment and discrimination Plaintiff experienced by Defendant's employees was motivated by personal reasons as opposed to generalized contempt or hatred, all of the alleged misconduct arose in the course of Plaintiff's employment with Defendant. Therefore, we find that Plaintiff's IIED claim is preempted by the PWCA, Defendant's motion to dismiss the claim in Plaintiff's original Complaint for failure to state a claim upon which relief can be granted must be granted, and Plaintiff's Motion to Amend his Complaint to allege the proposed IIED claim is denied on the basis of futility. In light of this conclusion, it is not necessary to address Defendant's alternative argument that Plaintiff's Complaint and proposed Amended Complaint fail to state an IIED claim upon which relief can be granted.

### E. Plaintiff's breach of a covenant of good faith and fair dealing claim.

Defendant next argues that Plaintiff's state law claim for breach of a covenant of good faith and fair dealing must be dismissed for failure to state a claim upon which relief can be granted and Plaintiff's Motion to Amend the Complaint to add this contractual claim should be denied because "his claim as presently configured does not include the technical breach of contract basis that is required in order to pursue a claim based on the breach of

an implied covenant of good faith and fair dealing." Defendant's Omnibus Response, p. 8.

Pennsylvania has adopted Section 205 of the Restatement (Second) of Contracts which provides: "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205. This obligation extends only to the performance of those duties the parties have agreed to assume. See Baker v. Lafayette College, 350 Pa. Super. 68, 504 A.2d 247, 256 (1986). Moreover, the duty of good faith and fair dealing "does not create independent substantive rights" and it does not give rise to a cause of action separate and apart from a breach of contract cause of action. Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013) (citing Commonwealth v. BASF Corp., 2001 WL 1807788, *12 (Pa. Commw. Ct. )). Thus, in Pennsylvania, a claim predicated on a breach of the covenant of good faith is "subsumed in a breach of contract claim." Burton, 707 F.3d at 432 ( citing LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 392 (Pa. Super. 2008)).

To establish a claim for breach of contract under Pennsylvania law, a plaintiff must plead "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." CoreStates Bank, Nat'l Ass'n v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999). There is a "very strong presumption" in Pennsylvania that employment relationships are at-will. Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1258 (M.D. Pa. 1994) (quoting Scott v. Extracorporeal, Inc., 545 A.2d 334, 336 (Pa. Super. 1988)). An employee manual or handbook does not create an enforceable contract between an employer and employee unless "a reasonable person in the employee's position would interpret its provisions as illustrating the employer's intent to overcome the at-will rule and be legally bound by the representations contained in the

book." Engle v. Milton Hershey Sch., 2007 WL 1365916, *8 (M.D. Pa.) (quoting Hartman v. Sterling, Inc., 2003 WL 22358548, *13 (E.D. Pa. 2003)). Thus, in Brethwaite v. Cincinnati Milacron Marketing Co., 1995 WL 232519 (E.D. Pa.), the district court explained:

> "Pennsylvania courts have consistently held that an employee handbook or manual or other communication 'only forms the basis of an implied contract if the employee shows that the employer affirmatively intended that it do so'. Specifically, 'in order for a handbook to be construed as a contract it must contain unequivocal provisions that the employer intended to be bound by it, and, in fact renunciated the principle of at-will employment'."

Id. at *5 (citations omitted).

In his original Complaint, Plaintiff's breach of the covenant of good faith and fair dealing claim is based upon the following alleged conduct:

> 50. By acting in the manner as aforesaid and by failing to provide Plaintiff with employee assistance as required by the company handbook, practices, customs, protocol, rules and regulations, which would have ensured Plaintiff's due process rights, Defendant breached its obligation to deal with Plaintiff fairly and in good faith.
>
> 51. As a direct and proximate result of Defendant's conduct, as aforesaid, Plaintiff has suffered damages.

Complaint, ¶¶ 50-51. In his proposed Amended Complaint, Plaintiff pleads additional relevant allegations:

> 68. By acting in the manner as aforesaid and by falling to provide Plaintiff with employee assistance as required by the company handbook, practices, customs, protocol, rules and regulations, which would have ensured Plaintiff's due process rights, Defendant breached its obligation to deal with Plaintiff fairly and in good faith.
>
> 69. For example, when Plaintiff was being harassed by Gary Puto and exhibiting severe signs of stress, Brian Benjamin should have recommend that Plaintiff seek employee assistance.
>
> 70. The termination of Plaintiff before the end of the year resulted in bad faith and was intended to deprive Plaintiff of his year-end bonus.
>
> 71. Plaintiff believes, and therefore avers, that the termination of Plaintiff

was done in bad faith, to motivated by a managerial employee who wanted to make room for Corey Kovaalcik, who was the son of an employee of Defendant, a relative or friend of one of the upper [level] managers.

Amended Complaint, ¶¶ 68-71.

Reviewing Plaintiff's allegations in both his original Complaint and proposed Amended Complaint, Plaintiff has failed to allege facts which support a claim for breach of a covenant of good faith and fair dealing. Therefore, Plaintiff's breach of the covenant of good faith and fair dealing claim in his original Complaint shall be dismissed for failure to state a claim upon which relied can be granted and Plaintiff's Motion to Amend his Complaint shall be denied to the extent the motion is based on his proposed breach of a covenant of good faith and fair dealing claim.

### F. Defendant Carpenter Technology Corporation.

Defendant's final argument is that Plaintiff's Complaint and proposed Amended Complaint fail to show that Carpenter Technology Corporation ("CTC") is a proper defendant under the integrated enterprise test." Defendant's Omnibus Response, p. 8. "At most these allegations set up a claim for indemnification that runs between Defendants Latrobe Steel Company and Carpenter Technology Corporation, or Latrobe Specialty Steel Company and Carpenter Technology Corporation. However, the allegations do nothing to advance the plausibility of an employer-employee relationship under the integrated enterprise test." Id.

Plaintiff's Complaint alleges the following with respect to CTC:

4. At all times material hereto, both Latrobe Steel Company and its fictitious name, Latrobe Specialty Steel Company, were wholly owned subsidiaries of Carpenter Technology Corporation, a Citizen of the United States, or, in the alternative, sometime subsequent to Plaintiff's date of employment and/or discharge, purchased the assets and liabilities of Latrobe Steel Company. ...

17

> 5. Defendants Latrobe Steel Company, t/d/b/a Latrobe Specialty Steel Company and Carpenter Technology Corporation, for purposes of the allegations hereinafter set forth, will be referred to collectively as "Defendant."

Complaint, ¶¶ 4-5. Plaintiff's proposed Amended Complaint alleges the following with respect to CTC:

> 4. At all times material hereto, both Latrobe Steel Company and its fictitious name, Latrobe Specialty Steel Company, were wholly owned subsidiaries of Carpenter Technology Corporation, a Citizen of the United States, or, in the alternative, sometime subsequent to Plaintiff's date of employment and/or discharge, purchased the assets and liabilities of Latrobe Steel Company. ...
> At some time in 2012, Defendants Latrobe Steel Company and Carpenter Technology Corporation entered into a written agreement wherein Carpenter Technology Corporation purchase[d] all assets and liabilities of Latrobe Steel Company's Division known as Latrobe Specialty Steel Company.
>
> 5. Due to the assumption of all of the assets and liabilities of Latrobe Specialty Steel Company from Latrobe Steel Company by Defendant Carpenter Technology Corporation, Defendant Carpenter Technology will be liable to Plaintiff, in the event of a verdict in Plaintiff's favor. Carpenter Technology Corporation, for the purposes of the allegations hereinafter set forth, will be referred to collectively as "Defendant."

Amended Complaint, ¶¶ 4-5.

The requisite inquiry into whether or not CTC is a proper defendant in this case is one that is fact-driven. Consequently, we find that at this early juncture, prior to discovery, the allegations in Plaintiff's Complaint and proposed Amended Complaint are sufficient to state claims against Carpenter Technology Corporation. Defendant's Motion to dismiss Carpenter Technology Corporation as a defendant shall be denied and Plaintiff is permitted to continue to name Carpenter Technology Corporation as a defendant in his Amended Complaint.

## III. Conclusion.

For the reasons set forth above: (1) Defendant's Motion to Dismiss the original Complaint is denied to the extent that it seeks the dismissal of Plaintiff's claim of age discrimination under the ADEA and the dismissal of all claims against Carpenter Technology Corporation and otherwise is granted; and (2) Plaintiff's Motion to File an Amended Complaint is granted to the extent he seeks to file an Amended Complaint against Defendant that alleges an age discrimination claim under the ADEA and otherwise is denied. An appropriate order follows.

### ORDER

AND NOW, this 17th day of August, 2015, it is hereby ORDERED, ADJUDGED AND DECREED that:

(1) Defendant's Motion to Dismiss Plaintiff's original Complaint is granted with prejudice to the extent that Defendant moved to dismiss Plaintiff's claims in his original Complaint for hostile work environment under the ADEA, intentional infliction of emotional distress, and breach of duty of good faith and fair dealing;

(2) Defendant's Motion to Dismiss Plaintiff's original Complaint is denied to the extent that Defendant moved to dismiss Plaintiff's claim of age discrimination under the ADEA and to dismiss all claims against Carpenter Technology Corporation; and

(3) Plaintiff's Motion to File an Amended Complaint is granted to the extent he seeks to file an Amended Complaint against Defendant that alleges an age discrimination claim under the ADEA, and otherwise is denied.

It is further hereby ORDERED, ADJUDGED AND DECREED that Plaintiff shall file his Amended Complaint setting forth his age discrimination claim under the ADEA no later than September 2, 2015.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge